**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M.**

**No. 21-0108** (Ohio County 19-CJA-115)

**MEMORANDUM DECISION**

Petitioner Mother L.W., by counsel Amy Pigg Shafer, appeals the Circuit Court of Ohio County's January 8, 2021, order terminating her parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. The father H.M., by counsel Richard W. Hollandsworth, also filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her an extension of her post-adjudicatory improvement period, denying her motion for a post-dispositional improvement period, and terminating her parental rights without imposing a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner crashed her vehicle head-on into a semi-truck while under the influence of illicit drugs resulting in both she and then-four-year-old A.M. sustaining serious injuries. The DHHR further alleged that petitioner was life-flighted to the hospital and, upon admission, tested positive for amphetamine, buprenorphine, and benzodiazepine. Medical staff also found a small bag of methamphetamine in petitioner's possession. Additionally, the police report for the collision stated

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

that officers found a pipe used for smoking methamphetamine in the center console of petitioner's vehicle. Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in October of 2019, wherein petitioner stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court also granted petitioner a post-adjudicatory improvement period, which began in January of 2020. The terms of petitioner's post-adjudicatory improvement period required her to maintain sobriety from drugs and alcohol, submit to random drug screens, participate in supervised visitations, attend narcotics anonymous ("NA") and alcoholics anonymous meetings once a week, participate in parenting and adult life skills classes, undergo a psychological evaluation, attend individualized counseling, complete the program at an inpatient drug treatment facility and complete further substance abuse treatment as recommended by such a facility upon her discharge. Petitioner was also required to address her mental health issues, sign a release for her medical records during the course of her various treatments, cease all contact with inappropriate people, and be completely honest and open in all communications with the DHHR, the multidisciplinary team ("MDT"), and the court. Initially, petitioner refused to attend inpatient drug treatment and opted to attend intensive outpatient drug treatment. However, petitioner continued to test positive for methamphetamine and agreed to attend an inpatient drug treatment program. By February of 2020, petitioner had completed thirty days at an inpatient drug rehabilitation program but relapsed by testing positive for methamphetamine upon discharge. In response the MDT agreed that petitioner must complete a ninety-day inpatient drug rehabilitation program, which she entered in late February of 2020.

In March of 2020, the circuit court held a hearing, during which the DHHR discussed terminating petitioner's improvement period and presented evidence that petitioner violated the rules at her first inpatient drug rehabilitation program. The circuit court deferred ruling on the motion in light of petitioner's admission into a second longer drug rehabilitation program in February of 2020. At a status hearing in June of 2020, the court noted that petitioner's improvement period was set to expire on July 17, 2020, but would entertain a motion to extend the improvement period in light of petitioner's completion of a ninety-day drug rehabilitation program in May of 2020 and participation in intensive outpatient drug treatment and counseling. However, petitioner filed no motion for an extension prior to the July 17, 2020, expiration date. By August of 2020, the DHHR presented evidence at a status hearing that despite petitioner's enrollment and completion of various drug treatment programs, she continued to test positive for methamphetamine and alcohol. Accordingly, the circuit court set the matter for disposition.

Petitioner filed a motion for an extension of her post-adjudicatory improvement period or in the alternative a "dispositional improvement plan" in late September of 2020. Within the motion, petitioner conceded that her post-adjudicatory improvement period had previously expired yet requested the court to extend the improvement period. Further, in the alternative, petitioner requested a "Disposition 5 resolution" arguing that her parental rights should not be terminated because the child was reunified with the father.

In October of 2020, the guardian filed a report indicating that petitioner had not been truthful with the MDT in January of 2020 about her relapse and later withheld information about her prescription for Subutex from a cash-based clinic in Pennsylvania. Most importantly, the

guardian stated that petitioner attempted to cheat a drug screen in February by bringing someone else's urine as a testing sample. After petitioner was caught, she tested positive for methamphetamine. Further, the guardian reported that around May of 2020, petitioner went to the emergency room for stomach pain and obtained morphine without telling the emergency room staff that she was addicted to opioids. The guardian recommended the termination of petitioner's parental rights arguing that the "history of this case proves that no amount of treatment will enable [petitioner] to have her child safely returned to her."

In October and November of 2020, the circuit court held dispositional hearings. At the October hearing, petitioner proffered that she filed a motion for an extension of a post-adjudicatory improvement period or in the alternative a motion for a "dispositional improvement plan."[2] The circuit court determined that the motion for an extension was untimely and denied the same. Regarding petitioner's motion for a "dispositional improvement plan," the circuit court treated the argument as one for a post-dispositional improvement period and stated that it would consider and hear evidence upon the motion.

The father testified that petitioner had been in multiple vehicle accidents besides the one that initiated the DHHR's investigation in the current case. In August of 2018, petitioner crashed her vehicle, resulting in A.M. being injured and the vehicle getting totaled. The father stated that petitioner appeared to be under the influence of drugs at the hospital after that crash, but no blood tests were performed. The father stated that the child was returned to his physical custody in March of 2020, and that she panicked whenever she saw a large or loud truck. He said that he desired for petitioner's parental rights be terminated for fear for the child's safety if placed in petitioner's care.

Next, the DHHR worker testified that petitioner opted to attend intensive outpatient drug treatment in October of 2019 but continued to fail every drug screen resulting in the temporary suspension of petitioner's supervised visits. After the first intensive outpatient program was unsuccessful, petitioner completed a drug detoxification program, and then entered a thirty-day inpatient drug rehabilitation program in December of 2019. However, upon discharge in January of 2020, petitioner tested positive for marijuana, methamphetamine, and nonprescribed buprenorphine. Petitioner then entered a ninety-day inpatient drug rehabilitation program in February of 2020. After only four days, petitioner was removed from the program for rules violations regarding cell phones and pill counts. Petitioner entered drug detoxification again and then entered a different long-term inpatient drug treatment facility by the end of February of 2020. Thereafter, petitioner completed that program and was discharged in May of 2020 with follow up care with intensive outpatient drug treatment that included individualized therapy and counseling. However, from June to August of 2020, petitioner relapsed and was abusing methamphetamine and alcohol, and was suspected of abusing buprenorphine. The worker stated that as a result of petitioner's numerous relapses, supervised visitations had been reinstated and suspended four times, to the child's detriment. Shortly after visits were reinstated in August of 2020, petitioner

---

[2]As previously noted, the motion requested an extension of petitioner's post-adjudicatory improvement period and, in the alternative, requested an alternative disposition to the termination of petitioner's parental rights. The motion made no mention of requesting a post-dispositional improvement period.

stopped consistently submitting to drug screens and continued to test positive for methamphetamine as late as September of 2020.

Regarding petitioner's use of buprenorphine, the worker stated that petitioner withheld information from the MDT that she obtained a prescription for Subutex, a form of buprenorphine, in June of 2020 from a cash-based clinic in Pennsylvania. She explained that she had concerns that petitioner did not instead obtain Suboxone, which is different as it contains both buprenorphine and naloxone, an opioid "blocker." She opined that petitioner should have sought a prescription for Suboxone from her intensive outpatient treatment center but did not do so. Also, petitioner did not test positive for the Subutex until July of 2020, and sporadically tested positive for it until September of 2020, indicating that petitioner was not using the medication as directed. Further, the worker testified that petitioner previously admitted to abusing Subutex by smashing it and snorting it and that petitioner stated that Subutex was her drug of choice after methamphetamine. Finally, the worker stated that petitioner obtained the Subutex prescription without consulting the DHHR worker, her legal counsel, or her drug counselors. On cross-examination, the worker stated that petitioner had stable housing and employment and had completed her parenting and adult life skills classes.

At the November of 2020 hearing, petitioner's clinical mental health therapist at her intensive outpatient program testified that petitioner attended most weekly therapy sessions from mid-July to October of 2020. However, the therapist stated that petitioner failed to disclose obtaining a Subutex prescription in June of 2020, and that in his opinion buprenorphine, such as Subutex or Suboxone, does not help address methamphetamine addiction. Also, after initially lying to him in early September of 2020 during a session, petitioner admitted to abusing methamphetamine that she found while cleaning her house. The therapist also stated that petitioner claimed that in August of 2020, strangers held her at knife point and forced her to snort cocaine in an effort to prove that she was not a "narc."

Next, petitioner's peer recovery specialist testified that he's known petitioner for two years and that she completed their intensive outpatient program a few days prior on November 13, 2020. He also explained that petitioner had been receiving prescribed Subutex (buprenorphine only) from a clinic in Pennsylvania but now receives Suboxone (buprenorphine and naloxone), which has an opioid blocker, through the medication-assisted treatment program at his intensive outpatient drug treatment facility. The specialist stated that petitioner had been compliant with the medication-assisted treatment program over the previous month but conceded that buprenorphine should not be clinically used to treat methamphetamine addiction.

Finally, petitioner testified that she had stable housing and employment, and she continued therapy and counseling within her medication-assisted treatment program. She stated that despite twenty years of substance abuse addiction, she did not enroll into an inpatient drug rehabilitation program until she was directed to do so in the instant proceedings. She admitted to obtaining the Subutex prescription from a clinic in Pennsylvania, despite her prior abuse of that substance by snorting it, and further admitted to not telling her counselors or the DHHR worker about the prescription. She also conceded that she did not take the Subutex as prescribed, resulting in the inconsistent positive drug screens between June and September of 2020. Petitioner stated that she tested positive for cocaine and opiates in late August of 2020 because she was forced to ingest

4

them by strangers but admitted that she did not report the incident to the police. Upon cross-examination by the guardian, petitioner conceded that she did not successfully complete all of the terms and conditions of her post-adjudicatory improvement period.

After hearing the evidence, the circuit court noted that petitioner had been in several vehicle accidents due to her substance abuse, resulting in injuries to the child. The court also noted that petitioner lied throughout the proceedings regarding her relapses, drug screens, and obtaining a prescription for Subutex in Pennsylvania. The circuit court concluded that petitioner had been sober for two of the fourteen months that the case had been pending and that after twenty years of drug addiction and multiple interventions of drug treatment, petitioner continued to abuse alcohol, prescribed medications, and illicit drugs. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the child to terminate petitioner's parental rights. The circuit court's January 8, 2021, dispositional order reflected this termination.[3] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred by failing to extend her post-adjudicatory improvement period. West Virginia Code § 49-4-610(6) provides that

> [a] court may extend any improvement period granted pursuant to subdivision (2) or (3) of this section for a period not to exceed three months when the court finds that the respondent has substantially complied with the terms of the improvement period; *that the continuation of the improvement period* will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

---

[3]The father successfully completed an improvement period, and the petition was dismissed against him. The child was reunified with the father.

(Emphasis added). According to the record, petitioner's post-adjudicatory improvement period expired on July 17, 2020, and petitioner waited to file her motion for an extension on September 29, 2020. Therefore, the improvement period could not continue after its expiration. Furthermore, the circuit court found that petitioner obtained a de facto extension of her post-adjudicatory improvement period by receiving services after its expiration. As petitioner clearly waited to file the motion for an extension more than two months after the expiration of her post-adjudicatory improvement period, we find that petitioner is entitled to no relief in this regard.

Next, petitioner alleges that the circuit court erred in denying her motion for a post-dispositional improvement period because she experienced a substantial change in circumstances since the granting of her post-adjudicatory improvement period and, she argues, she was likely to fully participate in a post-dispositional improvement period. According to petitioner, she complied with the terms and conditions of her post-adjudicatory improvement period, including maintaining housing and employment, actively participating in therapy, completing adult life skills and parentings sessions, completing various drug treatment programs, participating in all supervised visitations, and attending all hearings and MDT meetings. By the dispositional hearing, petitioner had obtained a new sponsor at NA, had taken on additional individualized counseling and group therapy, and was compliant with her medication-assisted drug treatment through an intensive outpatient program. In light of this, she argues that the circuit court should have granted her a post-dispositional improvement period. Upon our review of the record, we find petitioner is entitled to no relief.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period after the expiration of a previous improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." Further, because petitioner was granted a prior improvement period, she was required to show that she "experienced a substantial change in circumstances" and that due to the change in circumstances, she was likely to fully participate in a second improvement period. It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

It is clear from the record that petitioner was not likely to fully participate in a post-dispositional improvement period based on her performance in her post-adjudicatory improvement period. Indeed, petitioner testified that she did not successfully complete all of the terms and conditions of her post-adjudicatory improvement period. The record shows that petitioner underwent intensive outpatient drug treatment four times, attended inpatient drug treatment three times, completed drug detoxification at least two times, and remained in therapy and counseling sessions sporadically throughout the proceedings. Despite these extensive efforts to address her drug addiction, petitioner continued to relapse and abuse methamphetamine, buprenorphine, cocaine, alcohol, and marijuana at various points throughout the case. Petitioner reportedly abused methamphetamine as late as September of 2020. Also, according to the guardian, petitioner attempted to cheat a drug screen by using someone else's urine sample, lied about various relapses to the MDT, obtained morphine from an emergency room without divulging her addiction, lied about obtaining the Subutex prescription for four months to the MDT and her drug counselors, and

6

incredulously claimed that strangers held her at knife point to force her to snort cocaine in late August of 2020. Although petitioner completed several terms of her improvement period, she failed to follow the most important terms—honesty with the MDT and drug counselors and maintaining sobriety. "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). When considering petitioner's lack of candor with the court and the MDT throughout the proceedings and petitioner's failure to maintain sobriety despite extensive drug treatments, we find no error in the circuit court's denial of petitioner's motion of a post-dispositional improvement period.

This evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to respond to a reasonable family case plan. She failed to maintain sobriety as she abused methamphetamine as late as September of 2020—a few weeks before the October of 2020 dispositional hearing. Further, petitioner failed to avoid fraternizing with inappropriate individuals who abuse drugs as evidenced by her explanation for her cocaine use in late August of 2020. Petitioner admitted to obtaining a Subutex prescription from a cash-based clinic in Pennsylvania and hiding that fact from the MDT and drug counselors. She further admitted to not taking that medication as prescribed. Although petitioner exercised supervised visitations, her visits were suspended and reinstated four separate time due to her relapses, which was ultimately detrimental to the child. The circuit court noted, and the record supported its finding, that petitioner maintained sobriety for only two of the fourteen months while the case was pending and that petitioner was dishonest throughout the proceedings. Thus, the circuit court did not err in concluding that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse in the near future.

Insomuch as petitioner argues that she should have been given additional time to demonstrate that she could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Additionally, the record shows that the child would have been at risk if returned to petitioner's care, given her ongoing substance abuse

issues and history of serious vehicle accidents with the child. As such, it is clear that the welfare of the child required termination of petitioner's parental rights.

Finally, regarding petitioner's argument that her parental rights to A.M. should have remained intact since the child was reunified with the father, we have previously held that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Here, there was substantial evidence that petitioner was unlikely to improve and correct the conditions of abuse and neglect. Furthermore, petitioner was not entitled to a less-restrictive alternative disposition. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

8